CONFORTI & EISELE, INC., Respondent, v R. SALZSTEIN & CO., INC., Appellant.

First Department, March 10, 1977

*Alan Levy* of counsel *(Eli Saul Cohn* with him on the brief; *McDonough Schneider Marcus Cohn & Tretter,* attorneys), for appellant.

*Howard L. Kuttner* for respondent.

MURPHY, J. P. Conforti & Eisele, Inc. (hereinafter "Conforti") brought this proceeding pursuant to sections 75 and 76

of the Lien Law for an order vacating the demand for a verified statement served by R. Salzstein & Co., Inc. (hereinafter "Salzstein"). Salzstein cross-moved to dismiss Conforti's petition on the ground it did not state a cause of action.

Conforti, the general contractor, and Salzstein, the electrical subcontractor, entered into a subcontract with regard to the construction of the Carlton Park apartment building. To the extent here relevant, article 4 of that subcontract provides: "Terms of Payment: 90% on the 20th of the month for all material and supplies sold and delivered and for all work performed at the job during the previous month provided always however, that the contractor shall not be required to pay Subcontractor for any work performed unless and until the Owner has actually paid the Contractor therefor; ½ the balance (5%) to be paid upon substantial completion. Substantial completion achieved when subcontractor's billing reaches 99% or thereabout. The remaining 5% to be paid within 30 days after final approval and acceptance by Architect and Owner."

In the petition and supporting affidavits of Conforti's controller, it is alleged that Salzstein had defaulted in performance of the electrical subcontract. As a result of that default, Conforti was allegedly forced to hire other subcontractors to complete the electrical work. It is averred that Salzstein is not entitled to a balance of $18,332.48 under the subcontract but, by reason of its default, Conforti maintains that Salzstein has actually been overpaid by $3,648.49. Conforti also stresses that it had paid more money ($5,246,306.03) to the various subcontractors than it has received ($5,057,308.29) from the owner. Conforti contends that until the owner forwards the balance of $383,790.43, no money is due to Salzstein under article 4 of the subcontract. Since no money is due to Salzstein, Conforti further reasons that the demand for a verified statement under subdivision 1 of section 76 of the Lien Law is premature.

In the answer and opposing affidavit of Salzstein's vice-president, a denial is made that any default has occurred. It is further emphasized that the principals in the owner, the architect, and the general contractor are basically the same individuals. It is Salzstein's contention that the owner, by reason of its close relationship with the general contractor and the architect, is improperly withholding moneys due to it.

If the only question presented upon appeal was whether

Salzstein had satisfactorily performed under the subcontract or had defaulted, it would be clear that Salzstein would be entitled to the verified statement since it is not the function of the courts to pretry the merits of the underlying claim. *(Matter of Fontaine Bleau Swimming Pool Corp. v Aquarama Swimming Pool Corp.,* 27 Misc 2d 315.) However, the more narrow question now presented is whether the contractual conditions precedent must be fulfilled before Salzstein has a right to receive the verified statement. Those contractual conditions precedent state that money is only due to Salzstein when (1) Conforti has received payment from the owner for the balance of the work allegedly performed and (2) the entire work has been approved and accepted by the architect and the owner. In answering this finer question, we shall not explore the close relationship and control that purportedly exists between the owner, the general contractor and the architect.

The purpose of the enactment of article 3-A of the Lien Law is to make certain that laborers, materialmen and subcontractors on an improvement are paid from project funds (Lien Law, § 71; *Frontier Excavating v Sovereign Constr.,* 30 AD2d 487, 489, mot den 24 NY2d 991). To effectuate that purpose, it is essential that the protected classes be fully apprised of whether an owner or general contractor, such as Conforti, has funds available to pay their claims as trust beneficiaries.

In this proceeding, Salzstein's performance may have been completely satisfactory under the terms of the subcontract. Nonetheless, if the conditions precedent in the subcontract are honored, its demand for a verified statement must be denied on Conforti's representation, be it true or false, that the owner had not forwarded the balance due and the architect had not given final approval. Even if Conforti's representation is true, there remains the distinct possibility that the owner and architect might be wrongfully withholding final acceptance and approval.

We do not overlook the possibility that Salzstein itself may presently be in default. Nevertheless, the public policy in this area favors early and liberal disclosure as to the existence and status of any trust arising under article 3-A. This public policy must take precedence over the contractual conditions precedent even though doubts may exist as to the validity of a particular subcontractor's claim. The contractual conditions precedent must be considered void under subdivision 1 of section 76 of the Lien Law, since they directly restrict a

subcontractor's right and ability to be informed as to whether a general contractor is holding any moneys in trust for it. *(Matter of Allerton Constr. Corp. v Fairway Apts. Corp.,* 26 AD2d 636.) In so finding, we do not reach the question of whether those provisions may otherwise be enforced under other areas of the law.

In light of the foregoing the judgment, Supreme Court, New York County (SAYPOL, J.), entered February 25, 1976, which granted the petition vacating the demand for a verified statement and which denied the cross motion to dismiss the petition, should be reversed, on the law, with costs and disbursements, and the petition should be denied and the cross motion dismissing the petition should be granted.

LUPIANO, CAPOZZOLI, LANE and MARKEWICH, JJ., concur.

Judgment, Supreme Court, New York County, entered on February 25, 1976, unanimously reversed, on the law, and vacated, the application denied, the cross motion granted and the petition dismissed. Respondent-appellant shall recover of petitioner-respondent $40 costs and disbursements of this appeal.